**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| CHARGEPOINT, INC., § § Plaintiff, § § v. § § SEMACONNECT, INC., § § Defendant. § § § | Civil Action No. 8:17-cv-03717-MJG |

**DEFENDANT SEMACONNECT'S IDENTIFICATION OF
NON-INFRINGEMENT DEFENSES**

In accordance with the Court's order denying ChargePoint's Motion for Emergency Injunctive Relief (Dkt. 39 at 2), SemaConnect hereby submits a preliminary identification of non-infringement defenses of the Asserted Claims.[1]  SemaConnect contends that the Asserted Claims are all invalid under 35 U.S.C. §§ 101, 102, 103, and 112 or are unenforceable arising from ChargePoint's named inventors' inequitable conduct, and therefore cannot be infringed.  In addition, the Accused Products do not infringe any of the Asserted Claims, because they do not practice each and every limitation of the Asserted Claims.

**I.   THE ASSERTED PATENTS ARE INVALID, AND THEREFORE CANNOT BE INFRINGED**

A party cannot infringe an invalid patent.  *See Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is nothing to be infringed.").

---

[1] ChargePoint is asserting claims 31 and 32 of U.S. Patent No. 7,956,570 ("the '570 patent"); claims 1 and 2 of U.S. Patent No. 8,138,715 ("the '715 patent"); claims 1 and 8 of U.S. Patent No. 8,432,131 ("the '131 patent"); and claims 1 and 2 of U.S. Patent No. 8,450,967 ("the '967 patent") (collectively the "Asserted Claims").  The '570 patent, '715 patent, '131 patent, and '967 patent are collectively referred to as the "Asserted Patents."

Since each Asserted Patent is invalid, SemaConnect does not infringe any Asserted Patent. As explained in SemaConnect's Motion to Dismiss filed concurrently, the Asserted Patents are invalid under § 101 because they are directed to an abstract idea (turning a switch "on" and "off") and doing so using a conventional and known "remote server" is not an inventive concept sufficient to confer patent eligibility onto that abstract idea.

The Asserted Claims are also invalid under §§ 102 (anticipation) and/or 103 (obviousness), since all of their limitations were disclosed by the prior art. One of the named inventors of the Asserted Patents, David Baxter, admitted that the only alleged difference between the Asserted Patents and the prior art was that the claimed electric vehicle charging station is connected to a network and communicates with a remote server. (*See* Dkt. 7-3 ("Prior to their invention by ChargePoint (then Coulomb) there were no networked electric vehicle charging stations, although ***non-networked electric vehicle charging stations had existed for many years***.") (emphasis added).) SemaConnect contends that even a *networked* electrical vehicle charging station existed prior to the alleged inventions in the Asserted Patents. For example, charging stations have allowed customers to pay by credit card and would use a network to verify and process such credit card payments—turning the charging station "on" only if the network verified the credit card. Without the benefits of discovery or a prior art search vendor, SemaConnect has already identified the following prior art patents, patent application publications, and articles that disclose connecting a charging station to a network, which anticipates or renders obvious the Asserted Claims either alone or when combined with other references and/or the general knowledge of one of ordinary skill in the art:

- U.S. Patent No. 5,297,664;
- U.S. Patent No. 5,742,229;
- U.S. Patent No. 5,951,229;

- U.S. Patent No. 6,081,205;

- U.S. Patent No. 6,314,169;

- U.S. Patent No. 8,042,631;

- U.S. Patent App. Pub. No. 2004/0130292;

- U.S. Patent App. Pub. No. 2008/0052145;

- U.S. Patent App. Pub. No. 2008/0053716;

- U.S. Patent App. Pub. No. 2008/0312782;

- U.S. Patent App. Pub. No. 2009/0021213;

- WO 2006/095352;

- WO 2007/141543;

- SAE International, "Energy Transfer System for Electric Vehicles – Part 2: Communication Requirements and Network Architecture," Standard No. J2293/2 (June 1, 1997);

- M. Bojrup *et al.*, "A dual purpose battery charger for electric vehicles" (May 22, 1998);

- Steven E. Letendre & Willett Kempton, "The V2G Concept: A New Model For Power," Public Utilities Fortnightly (Feb. 15, 2002);

- Alec N. Brooks, "Final Report: Vehicle-to-Grid Demonstration Project: Grid Regulation Ancillary Service with a Battery Electric Vehicle" (Dec. 10, 2002);

- Christopher Nitta, "System Control and Communication Requirements of a Vehicle-to-Grid (V2G) Network" (Nov. 15, 2003);

- "Vehicle-to-grid power implementation: From stabilizing the grid to supporting large-scale renewable energy" (Apr. 11, 2005);

- AeroVironment, Inc., "PosiNET: Fleet Performance Management for your Fast-Charged Vehicles" (2006); and

- City of Westminster, "Installation of Two On-Street Recharging Points for Electric Vehicles" (Dec. 2006).

The Asserted Claims are also invalid under § 112 because they do not reasonably convey their scope to one of ordinary skill, lack adequate written description in the specification, and/or

3

are not enabled.  For example, all Asserted Claims require a "data control unit" and a "demand response system."  In light of the breadth ChargePoint attributes to them in its infringement allegations (*see* Dkt. 1 at 11-15, 18-19, 21-22, 24-26), these terms do not reasonably convey their scope to one of ordinary skill, lack adequate written description in the specification, and/or are not enabled, any one of which renders all the Asserted Claims invalid under § 112.

Accordingly, all Asserted Claims are invalid under one or more of §§ 101, 102, 103, and 112.  Any one of these defenses precludes a finding that SemaConnect infringes the Asserted Claims.

## II.   THE ASSERTED CLAIMS ARE UNENFORCEABLE DUE TO INEQUITABLE CONDUCT, AND THEREFORE INFRINGEMENT ALLEGATIONS ARE BARRED

ChargePoint's allegations of patent infringement are barred by its inventors' inequitable conduct.  *See Regeneron Pharma., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017).  The named inventors of the Asserted Patents did not disclose U.S. Patent App. Pub. No. 2009/0021213 ("the Johnson patent publication") to the Patent Office, even though they knew of the Johnson patent publication and its significance to the Asserted Patents.

The Johnson patent publication discloses a charging station that uses an Internet connection to verify payment information before allowing an electric vehicle to begin charging.  Because of its significance to the claimed invention, Coulomb (ChargePoint's predecessor) cited to the Johnson patent publication in June 2010 during the prosecution of U.S. Patent No. 7,906,937.  The Asserted Patents and the '937 patent are directed to network-connected electric vehicle charging stations (in fact, the '937 patent expressly claims "a networked charging station").  All of the named inventors of the Asserted Patents are also inventors of the '937 patent.  None of the Asserted Patents had issued and were either filed and undergoing prosecution or had not yet been filed when Coulomb disclosed the Johnson patent publication to

the Patent Office with respect to the '937 patent. Therefore, the named inventors all knew of the significance of the Johnson patent publication prior to the Patent Office issuing any of the Asserted Patents. However, even though the named inventors knew of the Johnson patent publication, they chose not to disclose the Johnson patent publication during the prosecution of the Asserted Patents.

SemaConnect intends to demonstrate that the Patent Office would not have issued the Asserted Patents but for ChargePoint's failure to disclose the Johnson patent publication. SemaConnect intends to conduct discovery and present expert testimony to show that the named inventors engaged in inequitable conduct, rendering all Asserted Patents unenforceable. *See Regeneron*, 864 F.3d at 1350 (explaining that withholding a material reference with the intent to deceive the Patent Office constitutes inequitable conduct).

### III. SEMACONNECT DOES NOT PRACTICE EACH LIMITATION OF THE ASSERTED CLAIMS, AND THEREFORE DOES NOT INFRINGE

The Accused Products do not infringe any of the Asserted Claims. While SemaConnect contends that it does not infringe any limitation in the asserted claims, below is an exemplary list of limitations that SemaConnect identified after a preliminary review of ChargePoint's infringement allegations and analysis of the claims as interpreted by ChargePoint.

#### A. All of the Accused Products Do Not Receive a Communication as Part of the Demand Response System or Modify the Application of Charge Transfer

The Accused Products do not practice the following limitations:

- "modify the application of charge transfer based on the communications received as part of the demand response system" ('131 patent, claim 1);

- "the communications received as part of the demand response system include power grid load data, and wherein the controller is further to manage charge transfer based on the received power grid load data" ('131 patent, claim 8); and

- "a communication for the network-controlled charge transfer device to modify application of charge transfer as part of a demand response system" ('967 patent, claim 1).

ChargePoint alleges that these limitations are met by virtue of "smart grid integration for easy energy metering and demand response." (Dkt. 1 at 22.) In contrast to the Asserted Patents, however, the accused charging stations do not receive "communication . . . as part of the demand response system" and then "modify the application of charge transfer" based thereon. Instead, decisions relating to energy usage are made at a central facility and the charging station only acts as a conduit for supplying electricity to the vehicle without making any modifications. The accused charging station, therefore, neither receives communication that is "part of a demand response" system, nor does it locally "modify application of charge transfer," as required by all asserted claims of the '131 and '967 patents.

B.   At Least Some of the Accused Products Do Not Contain the Claimed "Data Control Unit"

The Accused Products do not contain the claimed "data control unit" in claim 31 of the '570 patent, claim 1 of the '131 patent, and claim 1 of the '715 patent. "[U]nit" is a nonce term, and the phrase "data control" fails to provide any meaning to the claimed "unit," other than to provide a purely functional description. Under Federal Circuit precedent, nonce terms "reflect nothing more than a verbal constructs [that] may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically' do not connote sufficiently definite structure' and therefore may invoke § 112 para. 6." *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015). Therefore, the structure to perform the claimed functions of the "data control unit" must be limited to only the structure, materials, or acts described in the specification and equivalents thereof. *See id.* at 1347. Here, the specification of the Asserted Patents explains that the claimed "data control unit" is "a bridge

between the LAN and the WAN, and enables communication between the Smartlet™ 110 and the server 140." ('570 patent, 6:22-24.)  The Accused Products, in contrast, do not include a bridge between LAN and WAN.[2]  The Accused Products, therefore, lack "a data control unit," as required by all Asserted Claims of the '570, '131, and '715 patents.

      **C.**      **At Least Some of the Accused Products Do Not Contain the Claimed Communication From a Transceiver to a Data Control Unit Through a Wide Area Network to the Remote Server**

The Accused Products do not practice the following limitations:

- "a transceiver to communicate with a remote server via a data control unit that is connected to the remote server through a wide area network" ('131 patent, claim 1);

- "a transceiver to communicate requests for charge transfer with a remote server and receive communication from the remote server via a data control unit that is connected to the remote server through a wide area network" ('715 patent, claim 1); and

- "a data control unit connected to a wide area network for access to said server" that is also connected to a "controller" via "a local area network transceiver" ('570 patent, claim 31).

These claim limitations require a communication from "a transceiver" to pass through "a data control unit" before traveling "through a wide area network" to "the remote server." According to the Asserted Patents, "[a] transceiver is a device that both sends and receives signals, allowing for two-way communication." (*See, e.g.*, '570 patent, 8:16-17.)  As shown in

---

[2]  ChargePoint's infringement allegations conflate two different products: SemaConnect's old "ChargePro Charging Station," which were discontinued in 2014 and are no longer being sold, and its newer "Series 6 EV Charging Station." (*See*, *e.g.*, Dkt. 1 at 14-15 (citing to documents regarding both products in support of its allegation that the "Accused Products" meet a single limitation).)  There are important differences between these two products that require that each product be considered separately.  Most relevant here is that the Series 6 Charging Stations (as well as the charging stations to be installed by SemaConnect as part of the ZEV Investment Plan) lack the LAN connectivity advertised in connection with the ChargePro Charging Stations.

7

Figure 1, reproduced below, the claimed "data control unit" (150) is a separate component from the apparatus that contains the claimed "transceiver" (110) and claimed "remote server" (140):



('570 patent, Fig. 1.)  The specification explains that the transceiver is located in the apparatus labeled 110.  ('570 patent, 7:28-34.)  This transceiver is responsible for the actual "send[ing] and receiv[ing] [of] signals."  ('570 patent, 8:13-44.)  As shown in Figure 1 and as set forth in the Asserted Claims, the claimed "transceiver" (located in apparatus 110) communicates with a remote server (140) "via a data control unit" (130).  ('570 patent, 6:22-24.)  The claim limitation that the transceiver communicate with a remote server "via a data control unit" specifies that the communication sent or received by the "transceiver" must pass through the "data control unit" before arriving at the "remote server," evidencing that the "data control unit" is external and separate from the "transceiver."  Moreover, the "data control unit" cannot be a component of the "remote server," since the claims require that the "data control unit" communicate with the "remote server" "through a wide area network."  Therefore, the specification and the claims

consistently require that the "data control unit" be a separate and distinct external component from the claimed "transceiver" and "remote server."

ChargePoint has failed to identify any external "data control unit" in the Accused Products that is located between the claimed "transceiver" and the claimed "remote server." Even if ChargePoint were to identify such a component, however, that component is not sold or offered for sale by SemaConnect.

### D.  ChargePoint Has Failed its Burden of Proof in Showing that the Accused Products Infringe All the Claimed Limitations

ChargePoint has failed to set forth any facts that show that the Accused Products infringe the following limitations:

- "a control device" ('570 patent, claim 31; '715 patent, claim 1; and '131 patent, claim 1);

- "a current measuring device" ('570 patent, claim 31);

- "a local area network transceiver connected to said controller, said local area network transceiver being configured to connect said controller to said data control unit" ('570 patent, claim 31);

- "a communication device connected to said controller, said communication device being configured to connect said controller to a mobile wireless communication device, for communication between the operator of said electric vehicle and said controller" ('570 patent, claim 31);

- "a transceiver to communicate requests for charge transfer with a remote server and receive communications from the remote server via a data control unit that is connected to the remote server through a wide area network" ('715 patent, claim 1); and

- "an electrical coupler to make a connection with an electric vehicle, wherein the control device is to turn electric supply on and off by switching the electric coupler on and off" ('715 patent, claim 2).

It is ChargePoint's, *not SemaConnect's*, burden to prove infringement of every limitation of each Asserted Claim. ChargePoint has failed to prove that the limitations above are found in the Accused Products, and therefore, SemaConnect does not infringe Asserted Claims.

**IV.    CONCLUSION**

SemaConnect reserves its rights to identify additional defenses once it has had an opportunity to conduct fact and expert discovery.  In addition, SemaConnect intends to rely on expert discovery to prove each of the defenses identified above.  However, as set forth above, each of these defenses alone demonstrate that SemaConnect does not infringe any of the Asserted Claims.

| | |
|---|---|
| DATED:  January 8, 2018 | Respectfully submitted, |
| | */s/ Alan L. Whitehurst* |

Alan L. Whitehurst
DC Bar No. 484873 (admitted *pro hac vice*)
alanwhitehurst@quinnemanuel.com
Marissa R. Ducca
DC Bar No. 979328 (admitted *pro hac vice*)
marissaducca@quinnemanuel.com
Deepa Acharya
DC Bar No. 267654 (admitted *pro hac vice*)
deepaacharya@quinnemanuel.com
Scott E. Lerner
D. Md. Bar No. 13327
scottlerner@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
777 6th St., N.W., 11th Floor
Washington, DC 20001
Tel: (202) 538-8000
Fax: (202) 538-8100

Sean S. Pak
CA Bar No. 219032 (admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant SemaConnect, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on January 8, 2018.

                                             */s/ Alan L. Whitehurst*_____
                                             Alan L. Whitehurst